The defendants relied upon length of possession, which they proved, as to part of the land, from 1780 and 1782. From the former period, claiming under a will; from the latter, under a deed, calling for 1,008 acres, but which proved, on a late survey, to be only 906 acres. They also proved that various persons were in possession of part of the land from 1769, but without any color of title; between whom, however, and the defendants, and those under whom they claim, no connection or privity appeared to have existed.
It was given in evidence that a large building had formerly been erected on the land; that there are yet the ruins of a palace and the appearances of a former general cultivation.
A deed to one Baker, bearing date in 1754, and a patent to Rowan, granted in 1735, called for BROMPTON, the name of the place in dispute. The defendants' deed calls for Baker's line. The defendants rested no part of their defense upon the act of 1791 for quieting ancient possessions.
It was further proved that the clerk's office of Bladen, the county in which the land lies, was destroyed by fire in 1768 or 1769; that (565) the defendants' deed when written was drawn from an old paper-writing, but whether with or without a seal, was not known.
The cause was tried in Bladen, Superior Court, before HALL, J., who instructed the jury that the length of possession, according to the evidence, warranted the presumption of a grant. The jury found a verdict for the defendant, and the plaintiff, upon his motion for a new trial being overruled, appealed to this court. The questions referred here for decision are: *Page 411 
1. Was it competent for the defendants to go into evidence of possession prior to 1780 and 1782, the commencement of the only paper titles they exhibited?
2. As the defendants did not claim under, or bring themselves within the act of 1791, ought the possession of part to be considered as the possession of the whole?
3. Was the length of possession proved sufficient to warrant the presumption of a grant?
4. Was it proper to set up a color of title without having shown that the land had been granted, except under the act of 1791?
There is so much natural justice in the (571) common-law principle which is now brought into dispute, it is so well adapted to meet the exigencies of men and to provide for the contingencies which might affect their property, that I think it would be a public misfortune if we felt ourselves bound to decide that it was not in force in this State. It certainly would shake a very large proportion of the titles in this country, and render it almost impossible for people hereafter to establish their rights, under the continual subdivision of lands which our law of descent produces. After a great lapse of time the law ought to supply that proof which, according to all probability, once had existence, and might have been produced if the subject had been litigated at an earlier period. The loss of papers, the destruction of records, the death of witnesses, are events some of which may and others must happen. But the rights which they established ought not thereby to be affected. It is, therefore, a very rational distinction made by the law between length of time operating as a positive bar and that which is only used by way of evidence. The first is made, by act of limitation, conclusive upon courts and juries. But when length of time is relied upon as evidence, the jury will believe it or not, according to the attendant circumstances. After a seven years possession under a color of title, they are bound to decide in favor of the defendants; after a long continued naked possession, the jury will consider how far it goes to convince them that a grant had originally issued. It is an application of the common principle that where the fact itself cannot be proved, you may give evidence of such circumstances as, in all probability, never would have existed without it.
The design of the act of 1791 was to give that protection to individuals against the State which the act of 1715 had afforded them against the claims of each other. In other words, to render a certain length of *Page 412 
possession a positive bar, which no former law had done. Before any act of limitation had been made to extend to the crown in England, many cases had established the position that long possession in the party might be given in evidence to a jury that it had originally commenced (572) by a grant, notwithstanding the maxim of Nullum Tempus; and since those statutes have been passed, 21 Jac. I., ch. 2 and 9 Geo. III., many possessions have been quieted against the crown by presuming a grant. Yet the argument there is equally applicable, that those statutes had repealed the common law; but it never was advanced. It is observable, too, that some of those decisions were made at a time when the prerogative maxim received a full portion of respect. In truth, it has never been called into practice but by arbitrary princes and unprincipled ministers, and has been considered by the best judges and writers as repugnant to natural equity and the maxims of a free government.
The principle of presuming a grant has been carried to a great extent inEldridge v. Knott, Cow., 315, where Lord Mansfield says, "It is not that in such cases the court really thinks that a grant has been made; because it is not probable a grant should have existed without its being upon record; but they presume that fact for the purpose and from a principle of quieting the possession."
Upon the first question, therefore, I am of opinion that the evidence of possession prior to 1780 and 1781 was properly received.
As to the second question, I think that the possession of the defendants was coextensive with their title. When that is established, either by the production of a grant, which was not done, or by evidence to enable the jury to presume a grant, which was given the possession, in contemplation of law, extends to the boundaries of the title; consequently, a possession of part is a possession of the whole.
The length of possession was quite sufficient to warrant the finding of the jury. The other circumstances in the case added much to its weight, such as the destruction of the clerk's office, a patent of 1735, calling for Brompton by name, and the place being noted as the residence of the Governor. Another circumstance, though not appearing in the case, must have been well known to the jury as a historical fact, viz., that in that part of the country great changes of property had been occasioned by the Revolution. Many of the inhabitants joined the (573) enemy and never returned to their homes, and valuable estates are now held solely under the petitioning law. All these circumstances must greatly contribute to the difficulty of deducing a title, and especially call for the application of legal rules which promote quiet and repose. *Page 413 
The color of title was, I think, properly set up, under all the circumstances. And my opinion, upon all the questions, is that there ought not to be a new trial.